IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| FORD MOTOR CREDIT COMPANY, | ) | |
| | ) | Case No. 4:06CV00004 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CURNELL G. HAIRSTON, ET. AL., | ) | |
| | ) | By: Jackson L. Kiser |
| Defendants. | ) | Senior United States District Judge |
| | ) | |
| | ) | |

Before me now is Plaintiff Ford Motor Credit Company ("Plaintiff") Fed. R. Civ. P. 56 Motion for Summary Judgment against Defendants Curnell G. Hairston and Hazel K. Hairston ("Defendants"). The parties have briefed the issues and oral argument was held on September 5, 2006. The motion is therefore ripe for decision. For the reasons stated herein, Plaintiff's Motion for Summary Judgment will be **GRANTED.**

### I.     LEGAL STANDARD

*A.     Summary Judgment*

Summary judgment is appropriate where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

1

247-48 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## II. STATEMENT OF THE FACTS

In accordance with the rules of law governing a summary judgment motion, I will recount the facts in the light most favorable to Defendants. Defendants Curnell and Hazell Hairston, owned Hairston Motor Company, which was a floorplan dealer for Plaintiff Volvo Car Finance. In 1997, as part of this arrangement, the Defendants agreed to hold in trust the proceeds from sales of cars acquired with Plaintiff's funds. The contract also included a Wholesale Guaranty, under which the defendants agreed to be personally and unconditionally liable for Hairston Motor Company's obligations to Volvo Car Finance. The agreement provided that Defendants would immediately pay any obligations that Hairston Motor failed to meet and the documents stated that any failure by Hairston Motor to pay Plaintiff would constitute a default whereupon Plaintiff could seek payment from Defendants.

In early 2004, Hairston Motor Company began to sell vehicles out of trust, failing to remit the proceeds for those sales to the Plaintiffs as required in the agreement. An audit by

2

Plaintiffs in December of 2004 revealed that 38 cars had thus been sold, making Hairston Motor Company liable for $999,449.00. After failing to recover this sum from Hairston Motor, the parties entered into a Forbearance Agreement in March of 2005. Under the terms of the Forbearance, Defendants agreed to sell Hairston Motor by April 8, 2005 in exchange for Plaintiff not exercising its remedies. In Paragraph C of the Forbearance, the Defendants acknowledged their liability to Plaintiffs for the amount stated above. Defendants further acknowledged that the 1997 Financing Statement and Wholesale Guaranty were both valid, enforceable, and in full effect and, pursuant to those documents, Defendants had defaulted and that they had no defenses or counterclaims against Plaintiff if Plaintiff were to enforce its remedies under the agreements.

When the Defendants were unable to sell Hairston Motor in the time stated, Plaintiff filed suit on April 21, 2005. The next day, Hairston Motor filed for Chapter 11 Bankruptcy and Plaintiff was subsequently allowed to began the foreclosure and liquidation process of Hairston Motor's collateral. After liquidation of the remaining assets, Hairston Motor still owed Plaintiff $992,552.78 for the 38 cars sold out of trust. Plaintiff therefore initiated this suit.

## III.  PROCEDURAL HISTORY

Plaintiff filed suit against Defendants as guarantors of Hairston Motor on January 20, 2006. Plaintiff filed its motion for summary judgment on August 9, 2006. Defendants filed their brief in opposition on August 14, 2006 and Plaintiff replied on August 23, 2006. Defendants filed a response in opposition on August 30, 2006. Oral argument on the motion was held before this Court on September 5, 2006.

## IV.  DISCUSSION

In this case, Plaintiff alleges that under the terms of the Wholesale Guaranty, Defendants

3

are personally liable for Hairston Motors' obligations to Volvo Finance, amounting to $992,552.78.  Furthermore, the Defendants have acknowledged in their Forbearance Agreement of March 2005 the facts of  Hairtson Motor's sale of cars out of trust and default, their personal obligation, and the lack of defenses. This acknowledgment leaves no material issue of triable fact as to the Defendants' liability.  Therefore, Plaintiff's motion for summary judgment must be **GRANTED**.  While the questions of liability and the principal amount of damages are settled, there still remains a question of which rate of pre-judgment and post-judgment interest should apply to this amount, as well as the amount of attorneys' fees due to the prevailing party, and the Court requests the parties' briefs on this issue.

The Wholesale Guaranty clearly stated that the defendants are jointly and severally liable for Hairston Motor Company's outstanding balance of $992,552.78.  The terms of the Wholesale Guaranty specifically states that "The Guarantors hereby further jointly and severally agree that if [Hairston Motor] shall fail to pay in full when due..all or any part of the Guaranteed Obligations, the Guarantors will immediately pay the same, without any demand or notice whatsoever."  These Guaranteed Obligations include "principal, interest, reimbursement, fees, charges, indemnification, or otherwise."  This Wholesale Guaranty was supported by valid consideration, namely, the Plaintiff's extension of financing credit.  Such an agreement is valid and binding.[1]  *Bank of Southside Virginia v. Candelario*, 385 S.E.2d 601, 604 (Va. 1989).  Additionally, the Defendants have acknowledged in the Letter Agreement of December 23, 2004 and in the Forbearance Agreement of March 2005 that they were in  breach of contract by selling

---

[1] The Wholesale Agreement, by its terms, applied the law of New Jersey.  However, whether this case is governed by Virginia or New Jersey law, the result on this point would be the same. *Public Loan Co., Inc. v. Federal Deposit Ins. Corp.*, 803 F.2d 82, 85 (3rd Cir. 1986).

4

38 cars out of trust, that the guaranty agreement is binding and controlling, and that they are unconditionally obligated to pay as guarantors.

Defendants contended that, despite their repeated acknowledgments of their liability, there were still triable issues of fact which I will deal with *seriatim*. First, Defendants objected to reliance on the affidavit of Thomas Rososky on the basis of hearsay. This objection must fail. Rososky is the executive responsible for the Plaintiff's wholesale floorplan credit arrangement and is specifically responsible for the Hairston Motor account. The facts in his affidavit regarding Ford Motor Company's succession to Volvo Finance North America were within his personal knowledge and not hearsay.

Next, Defendants argued that there was no admissible evidence regarding the Plaintiff's damages in this case, including the list of automobiles sold out of trust and proof that such cars had been financed by Volvo Finance. This objection must also fail because the Defendants themselves, acknowledged these facts in their Letter Agreement of December 23, 2004 and in the Forbearance Agreement of March 2005.

Thirdly and lastly, Defendants asserted in a supplemental brief that the Plaintiff had failed to mitigate damages. The Defendant argued that Volvo Finance had conducted monthly audits of Hairston Motor from 2000 to early 2004. When the monthly audits ceased, the Defendants began to sell automobiles out of trust. Had the monthly audits continued, the breach of the trust would have been discovered and remedied earlier.

This last argument must fail for two reasons. First, mitigation of damages is an affirmative defense. Such affirmative defenses should be raised in the pleadings or be waived. FED. R. CIV P. 8(c). Raising affirmative defenses in pre-trial motions will not result in waiver

5

unless this results in unfair surprise or unfair prejudice to the other party. *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 612 (4th Cir. 1999). The defendants had ample time to raise this defense in the answer to the complaint, or in bankruptcy proceedings before that. Raising the issue for the first time in a *supplemental* response brief suggests that the defendants were seeking to delay paying an obligation which they had already acknowledged in December of 2004. Such needless delay would prejudice the other party.

Turning to the second point, even if the affirmative defense of mitigation of damages could be raised at this point, it would fail on the merits. The Defendants argue that Plaintiff's representative was conducting monthly audits until the spring of 2004. Had the Plaintiff continued their monthly audits, they would have discovered that Defendants had sold five vehicles out of trust in June of 2004, ceased shipping cars at that time instead of in December of 2004, by which time Defendants had sold 38 cars out of trust.

The deficiencies of this "stop me before I breach contract again" defense are obvious. First, mitigation of damages is an affirmative defense, and the party that breached the contract bears the burden of proving it. *See R.K. Chevrolet v. Bank of the Commonwealth*, 256 Va. 74, 77, 501 S.E.2d 769, 771 (Va. 1998); *Foreman v. E. Caligari & Co.*, 204 Va. 284, 290, 130 S.E.2d 447, 451 (Va. 1963). It is a logical necessity that the injury, whether a contractual breach or a tortious injury, must occur before the duty to mitigate damages arises; the question of damages presupposes the discovery of the breach. *"Where an injured party finds that a wrong had been perpetrated on him*, he should use all reasonable means to arrest the loss." *Stonega Coke & Coal Co. v. Addington*, 112 Va. 807, 813, 73 S.E. 257, 259 (Va. 1911) (emphasis added). *Hannan v. Dusch*, 154 Va. 356, 377 (Va. 1930) ("The law imposes upon a *party injured by another's*

6

*breach of contract* or tort the active duty of using all ordinary care and making all reasonable exertions to render the injury as light as possible."); *see also* 25 C.J.S. *Damages* § 49 ("The duty [to mitigate damages] comes into existence *when the particular contract is breached*, *that is when the cause of action arises*, even though the damages may not then have been completely ascertained.") (emphasis added).

As it stands in this case, Volvo finance discovered the breach in December of 2004 and took immediate steps to stop any future losses. The Defendants in this case admitted at oral argument that the Volvo Finance had no contractual duty to conduct monthly audits and discover the Defendants' misconduct earlier than December of 2004. It would be an absurd misapplication of the rule for mitigation of damages to expect the Plaintiff to minimize the injury before the discovery of the breach. It would be equally absurd to extend the principle of mitigation of damages to make the non-breaching party responsible for preempting all damages by requiring them to police the other party's performance at every step in order to detect a breach at the earliest possible moment.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment will be **GRANTED**.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record.

ENTERED this 2nd day of October, 2006.

                                                  s/Jackson L. Kiser
                                                  Senior United States District Judge